Good morning and may it please the Court. My name is William Bray and I represent Mr. Thomas Sweeney. This is the latest step in a long process in which Mr. Sweeney has challenged the adverse employment decision taken against him by the FAA when he was forced to choose between a demotion in both status and pay or termination from the Federal Service. It was this adverse employment decision that he challenged by bringing How was he forced? How was this not a voluntary decision? We contend that when you look at the totality of the circumstances that Mr. Sweeney has alleged discrimination, procedural violations, regulation violations, and then also that the decision was made in talking with the superiors that if he did not decide to take the demotion that he would be terminated. Or that the procedures would be started to do so. According to what we have discussed with him and the stand that we have taken, Your Honor, that really it was a conflict at that point that he would have been terminated, that there wasn't a choice for him at that point, that either he was going to take the demotion or he would be terminated. There was no mention of any other type of proceeding in which he would be able to challenge. But even with the reassignment, as I understand the procedures, if he performed well, he could have had another opportunity to train as a controller. Is that not right? I don't believe if he took the demotion that he would have had an opportunity to continue his training. He was given an opportunity. I'll have to find that somewhere. The training that he was given, the extra training that he was given at that time was cut short. He was supposed to be given 30 hours, and he was only given 19 hours of extra training before it was cut short. Mr. Sweeney, acting pro se, was denied an evidentiary hearing by the board when the board ruled that it lacked jurisdiction to hear his claim. Continuing to act pro se, Mr. Sweeney timely filed his appeal with the district court for the Eastern District of Virginia, and in response, the board filed a Rule 12b-6 motion to dismiss, blessing that he had failed to state a claim upon which his request was met. Mr. Bray, is this a mixed question case? It is a mixed question case. All right. And the mixture is one side is what? One side is the discrimination case, which we did not bring, which was not brought to the district court. This was the non-discrimination. This portion of it is non-discrimination. So you waived it? We did not. The discrimination case? Yes. That is something that we are not prepared to argue at this point. No, no, no, no. You have to be prepared to answer my question. Did you waive the Title VII case? Yes, the Title VII case. It was not brought to the district court, Your Honor. So therefore what? So therefore, we are here claiming that the district court failed to follow the federal rules of civil procedure when it. So you have then lobbed the mixed question out as to the Title VII? Yes, sir. Okay. So Judge Hill, I mean, the district court was correct when it said that it didn't address it at all. Yes, the discrimination case was not addressed before the district court. But that was the whole point of Perry. When they changed it, you could go to the district courts and not the federal circuit to address those mixed questions, correct? I believe that was part of it. I know you sort of disadvantaged because you didn't do the complaint because he was still pro se answering. But what you left down then is that we have to agree with you that this was involuntary because that's what you have left is the procedural question and the question of whether or not his training should have been terminated, but not whether or not, in fact, there was gender discrimination. Right? Today, Your Honor, before this decision today is whether the district court improperly took – I'm sorry. The question today is whether or not the district court ignored Rule 12 of the Federal Rules of Civil Procedure when they should have given Mr. Sweeney a motion for summary judgment proceeding. What else would he have added? What else is there that he would have responded to in a motion for summary judgment? In a motion for summary judgment, Mr. Sweeney, as I've stated, he was acting pro se at the time. He would have been given a list of facts that the board considered that were not in dispute, which did not occur. He would have been given citations to the record under a specially captioned section that did not occur. And because of that, he did not have a reasonable opportunity to present material relevant to that motion. Speaking of the record, I did find what I was looking for. So he was a developmental air traffic controller. Is that what his – okay. So the procedures at JA 131 say that a developmental air traffic controller who accepts such reassignment, which he did, is provided with a clean slate with respect to his training and has the ability to reapply for a position at his or her original facility or another facility in the future. So this was to his benefit an opportunity for a clean slate rather than just being terminated. It was an opportunity for a clean slate as far as his training was discontinued. He had, according to the FAA, his training was discontinued at the level he was at and that he was only eligible to accept a position at a lower level, which it was Harrisburg. I'm going back to the voluntariness. Mr. Brady, the difficulty I guess I have with that is that I understand it's sort of counterintuitive where if you only have one choice, either you go to Harrisburg or you start the proceedings for termination. But here it's a little different. This was pursuant to a collective bargain agreement too, wasn't it? Yes. So then it's on the sense that I understand you correct me if I'm wrong, but it seems like it's based on if you have a person in training and for whatever reason, right or wrong, they don't believe they're making sufficient progress, the agreement is rather than that person being referred to termination being the only option, it gives an option to transfer. In fact, your client was a part of that option because they added, I guess with the union on him, it seems like a combination of Harrisburg because of proximity to his home, correct? Yes. So he actually helped compose the solution. So wouldn't it be, from a policy standpoint, the employer would be stuck with, I got a collective bargain agreement where I say I don't just terminate people, I give them a chance to have transfers. But when I do that, the person can take the transfer and then come back at me the other way and say, oh, but it wasn't voluntary, and I get to then test it. Isn't that sort of, say that's involuntary now, it's sort of kind of interesting with it in terms of you got a collective bargain. On one hand, it would be an unfair labor practice if they didn't follow that collective bargain agreement and just said, no, you're not cutting it in training, I'm referring you for termination. But because of the agreement, I'm giving you options to transfer. Am I wrong? Isn't that the context of this, in fact, as in the board saying this is not involuntary? Your Honor, you're absolutely right as far as the CBA and the procedural safeguards. And one of the things that we would argue, if this were to be remanded back to the district court, is that those procedural safeguards were not followed and that Mr. Sweeney's, the way that this was handled, made it basically, as we said, a complete, that it was already done, that he had had his representation, he had had the union representative with him during some of the meetings. But because of the discrimination that did take place, that he asserts took place, and that the procedural violations, the way that his training was cut short, the arguments with his managers, and the way the training review board was set up, that the complete, the total circumstances gave him no option but to accept the demotion or he would be terminated. There was no faith left in that system from his experiences that he would have a fair opportunity to be heard. And so in that fact, it was an involuntary or constructively involuntary decision. But if it came to us solely on the issue of procedural and whether or not, in fact, he was making sufficient progress, it seemed that Mr. TRB, the training review board that had the expertise, how would we say whether or not that was meaningful progress in being an air controller? Yes, sir. And that is part of it, and that is one of the things that we would like to argue in front of the district court and why we feel that just the fact that the district court ignored the federal rule of self-procedure, specifically Rule 12D, in making their decision to grant the board's motion to dismiss, that this caused harm to Mr. Sweeney and that he didn't have an opportunity to bring his case against the board in front of the district court and argue that they should have done a much more searching and exhaustive review of the facts inside the administrative record. But the problem is because you didn't present the Title VII question to the district court, if there was a full-blown Rule 56 opportunity to be heard and those kind of things, you couldn't even raise those comparative questions because the Title VII wasn't before the court. The only issue was whether or not the due process and the jurisdictional question was correct, that they didn't have jurisdiction. So you, I know you were not present, but the side you represent, all your eggs in one basket, the board has to be wrong about the jurisdictional question, but the Title VII aspect, because otherwise you could seem like you could surmount those procedures. You said, no, it may have been involuntary for purposes of the transfer, but there's a Title VII question that they discriminated against me. And that's how you go to the district court and you can litigate that. But when you lob that off and don't bring it, all you're left to is you're in the venue of the Borough Protection Board and say, oh, sorry, that's why I didn't address it. But, again, unfortunately you, you're stuck with what the procedural history is in this case because pros say that's one of the difficulties. But even though the law says we try to bend over backwards, it's not the right one, we give fair opportunity to construe it liberally. But you can't construe liberally that which does not exist. Yes, sir, Your Honor. And at the end of the day, this case is whether or not we are arguing whether or not they have jurisdiction. And Mr. Sweeney did not have a fair opportunity to argue jurisdiction when the court did not follow Rule 12d, which does not also cause cascading violations that he didn't receive any of the protections of Local Rule 56 and Local Rule 7f, which the Eastern District adopted to amplify the protections of Federal Rule 56. And so that is why the district court's actions allowed them to cherry pick some of the best facts in favor of their position and allowed the district court to rule on those facts. And then we believe that the district court erred in granting the motion to dismiss instead of converting to one for summary judgment, and that the district court's dismissal should be vacated at this time as a matter, remanded with instructions to convert into a motion to dismiss. And so you have some evidence that you would have presented that would address that if you had a full-blown Rule 56 type of... Not that it's in the outside of the administrative record, Your Honor, but what we do have is things that we would contend that is in dispute. The summary judgment motion, the board would be required to present a document with the captioned headings explaining exactly what they contend is not in dispute and with citations to those records. And when you're a pro se litigant, Your Honor, we believe that those sections are extremely important rather than looking through, I believe it was a 60-page document that had facts strewn about it that could have been contended. Thank you. Thank you. Mr. Bajon. Good morning, Mr. Chief Judge, and may it please the court. My name is Dennis Bajon. I'm an assistant United States attorney, and I appear before you today on behalf of the board. Your Honor, in the district court, Mr. Sweeney sought one thing and one thing only, judicial review of the MSPB's conclusion that it lacked jurisdiction under the Civil Service Reform Act to consider his challenge to his decision to accept a transfer to the Harrisburg International Airport. This court should affirm for two reasons. First, Mr. Sweeney has conceded that his request for judicial review was, for all intents and purposes, an appeal of the MSPB's jurisdictional decision. Both this court and the Federal Circuit have held that such appeals are governed exclusively by the And that the parties may not introduce new evidence in support of their positions. And, indeed, in response to questions from Your Honor, Mr. Chief Judge, and Judge Thacker, my colleague admitted that, that they did not seek to introduce evidence outside the administrative record. And under those circumstances, there's simply no authority for the proposition that the district court commits irreversible error by reviewing that administrative record on a motion to dismiss without converting it to one for summary judgment. And second. So summary judgment would not change anything? Is that what you're saying, that he could not bring anything in outside the administrative record anyway? That is absolutely correct, Judge Thacker. In fact, in essence, if we were to bring a motion for summary judgment, all that would change are the labels placed on the documents themselves. My colleague spent some time arguing that he would have had the benefit of separately captioned sections regarding the facts. I invite the Court to review our motion to dismiss and its memorandum in support, which is in the Joint Appendix in this case, which does just that. It has a separate factual section. It does provide citations to the administrative record. And if Mr. Sweeney, who was proceeding pro se, wanted to challenge the factual conclusions that the Board drew from the administrative record, he had that opportunity in response to our motion to dismiss. He chose not to file an opposition. So the statute says basically in the discrimination portion of a mixed case, the review essentially is to have those facts subject to a de novo review. That is correct. But it's silent insofar as the rest of the claim. And I take it you think or you suggest it's an appellate review. It is. And, Your Honor, this Court has so held in other mixed cases, ones that do not challenge the MSBB's jurisdiction, because those are new post-the Supreme Court's decision in Perry. This Court has held that when this Court reviews the MSBB's decision-making on a pure CSRA question, that is, divorced from any discrimination, that it reviews that question on the administrative record alone. This Court's decision in RANA against the United States stands for that proposition, and there are others. Moreover, Your Honor, the — before the Supreme Court's decision in Perry, the Federal Circuit, which exercised exclusive Article III judicial review over these questions, of course reviewed them directly from the MSBB, and of course did so only on an administrative record. That applies in this context? I believe that it does, Your Honor, because there is nothing — Unless you have Justice Gorsuch on your side, don't you? If I do, I'm happy to have him. I'm happy to have any Supreme Court justice on my side, Your Honor. But in the event after Perry, there was nothing in the Supreme Court's decision that suggested any alteration of the scope of judicial review, just the forum or venue for that judicial review in a district court and then ultimately in a regional circuit court of appeals. But what is to be made of the fact that the board didn't address the sexual discrimination claim? Nothing at all, Your Honor. In fact, if anything, it only highlights the fact that Mr. Sweeney's appeal of the MSBB's decision was entirely divorced from any — seeking any review of the merits of any discrimination claim. The MSBB never reached the merits of the discrimination claim because it concluded that it lacked jurisdiction over Mr. Sweeney's mixed case. Now, had Mr. Sweeney brought a Title VII claim in district court, he would have had the opportunity to go outside the administrative record to support his positions on the Title VII discrimination claims. But as my colleague admitted, he didn't do that. Right. Once you choose that route, I guess the mixed question still stays within the venue of the Merit Protection Board's procedures. That is correct. And although, obviously, the jurisprudence after Perry is still sort of in its nascency, there is some authority in this Court, albeit unpublished, for the proposition that even when, I think as you put it, Judge Gregory, that a plaintiff lops off the discrimination claim from what was a mixed case, it remains a, quote, unquote, mixed case for purposes of forum choice. That is to say that when a plaintiff brings a mixed case into district court but then lops off a discrimination claim, then he doesn't re-transfer back to the Federal Circuit. And so this remains properly within this Court and the district court. This would have been a different case, I suppose, at least in terms of going through the jurisprudence if, in fact, he had actually brought that claim to the district court. And then you would say, wait a minute, I still get to address this. It doesn't preclude that part of it. And at least we'd have that before us. That's correct, Your Honor. But I want to caveat that with one thing. And that is that to the extent that the plaintiff, in this case Mr. Sweeney, in this case were to not have lopped off the discrimination claim, the question that's before this Court today, the question about whether the MSPB correctly decided it lacked jurisdiction, that would still be a record review case. But the district court then would have been obligated to allow the plaintiff a, quote-unquote, trial de novo, that is, to go outside the administrative record on the other claims. Right. It would have been preclusive of the Title VII claim. That's right. Right. And that's why we don't have that part before us. That is absolutely correct, Your Honor. So what is the role of deference in this case? Excuse me, Your Honor. I'm sorry. The role of deference. So before Perry, the Federal Circuit addressed questions about the MSPB's jurisdiction over a mixed case, or any case for that matter, under the CSRA under a de novo standard of review. That is to say, an appellate de novo standard of review, as opposed to the trial de novo that applies to Title VII claims. So we adopted that. We had no problem in the district court saying that the district court could review the MSPB's decision on jurisdiction under the administrative record under a de novo and thus no deference to the MSPB's decision on its jurisdiction. I hope that made sense. Moving to the merits question, if you will, that is, the voluntariness of Mr. Harrisburg in lieu of proposed termination. The Federal Circuit, as did its predecessor, Article III Court of the United States Claims Court, has consistently held that an employee's voluntary decision to accept a transfer is not suddenly rendered involuntary merely because the alternative to that choice is to utilize the many available remedial avenues to fight his proposed removal. In fact, this Court has adopted that very principle, using those same cases into its jurisprudence in an analogous constitutional employment context in Stone v. University of Maryland. The fact remains that although Mr. Sweeney understandably didn't like those two choices, he had a choice. He could have, as the Claims Court held in Christie and this Court held in Stone, stood pat and fought his proposed removal. He could have fought it again before the FAA. And even if it was a fait accompli, he had the option to take that termination if it ultimately led to a termination, to either the MSPB or the EEOC, and ultimately to an Article III Court, either the Federal Circuit or the District Court and then this Court. He didn't make that choice. He chose voluntarily to take the transfer. Unless there are any other questions, Your Honor, I will cede the rest of my time and thank the Court for its time today. Thank you, Mr. Baha. Thank you. Mr. Bray? Your Honor, looking at the cases that the Board cited in its favor when it said that the administrative records could only be reviewed without converting, it ignores the plain language of the Federal Rules of Procedure 12D. Rule 12D requires conversion. The Fourth Circuit precedent under Citizens, Scenic Suburban River, which ruled under the APA standard, the Board likened it to that kind of case. This Court has stated that review of the administrative record is a legal question and is readily resolved by summary judgment. And then the Board also cited cases under the D.C. Circuit and the Circuit Court for the District of Columbia, specifically Marshall and Bates, both of which are uncertain in their positions. Marshall said in the footnote that although they did not convert, it was always better practice to convert into a summary judgment motion when looking at matters outside the pleading, such as the administrative record. Bates stated that they viewed the administrative record and that even though they could decide to continue as a motion to dismiss under 12B6, citing Marshall, they converted to a summary judgment hearing. Bates also stated that summary judgment... Jurisdiction is a legal question, isn't it? Yes, sir. And that was the only question before the District Court, correct? I'm sorry, could you... That was the only question before the District Court, were they correct in saying they did not have jurisdiction? Yes. So only to the extent you have facts that would... It's sort of like a quick look. You look enough... We can look at it enough to see whether we have facts that might determine it, but you look to see whether or not there are facts, and no facts in dispute, correct, as to what the procedure was in terms of making the choice to go to Harrisburg. Not in terms of the reason. I mean, he's not saying that nothing happened to him inappropriately, but the procedures and what... That's undisputed, correct, that they told him we're going to end your training and that you, under the collective bargaining, you have choices. We added Harrisburg, and if you don't do that, we're going to start proceedings for termination. None of that's in dispute, correct? We dispute that. They told him that they were going to start proceedings. We dispute that under the original letter that they said that his training was terminated. Okay, let's take it to that. Okay, he was going to be terminated. Even if that's the case, he would be terminated. Then what else would you need to determine a legal question of jurisdiction, whether or not that was correct in making that decision in terms of converting it to a summary judgment, Rule 56? Well, Your Honor, at the end of the day, the court didn't look at the facts in favor of most favorable to Mr. Sweeney. They didn't draw any reasonable inferences in his favor. They didn't follow Rule 56B. They didn't follow Rule 7F. But didn't he sign a statement saying that I did this about annoying him? He has a statement, right? Not only that, don't you? He did sign it, yes, sir. And the statement goes on and says, I did this on my own, it was laid out, right? Correct? But that's still, yes, it does say that. And that's undisputed, correct? That he signed it, yes. But it is, we are certain that he signed that. It was an involuntary decision. He had no choice. Either he was being fired or he was being demoted. What about the case law, the Federal Circuit case law, that says that that choice, given that option, choice doesn't change voluntariness or involuntariness? There's also a case law, Your Honor, that states that it can be constructively involuntary when you look at the totality of the circumstances, that he didn't have a choice. The problem is that a lot of those cases of constructive determination come in the context that most people are, they had will. But he had a panoply of rights that most employees don't. Most people say it's the highway or you do this, and that's it. But here, no, it's not just it. I'm staying here. I've got rights. I've got the FAA review. I have the Merit Protection Board. And if necessary, I have the United States courts, Article III courts, to say whether there's a lot of. . . He does have rights, yes, Your Honor. But when you look at Stone, which was cited by the board a moment ago, Stone, he ran that part of the hospital. He had been in the hospital for 30 years. He was very well-versed in the administrative procedures. Here we have a pro se lenient who, at that time, was not as well-versed and was not running the division, not similar to Stone, Your Honor. This is a different case than that. He was pressured. There was discrimination by his superiors. He was being managed out. And then, yes, he did sign. . . But that form he signed says the agency at JA-66 says, the agency has not exercised any pressure on me. That is correct, that the form does state that, yes. And that he signed it. He did sign it. But at that point, we contend that it was already a federal complaint and that he had no choice. It was sign it or be fired. And it was not a voluntary decision, totality of circumstances. He would have had no faith in his ability to proceed with them. And then the only last thing that I would like to say is that, under one of the cases cited by the board, Marshall, declared that when an agency action is challenged on grounds, that could call for an evidentiary hearing, which if we were ultimately successful, Mr. Sweeney would get his evidentiary hearing in front of the board, that Rule 12D applies. And because Rule 12D was not applied in this case, we request that it be remanded to be with instructions to change from a motion to dismiss to a motion for summary judgment. No further questions. Thank you. We'll come down and greet counsel and then proceed to our next case.
judges: Roger L. Gregory, James A. Wynn Jr., Stephanie D. Thacker